IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KATHERINE HEBL,

                         Appellant,                        OPINION AND ORDER

v.

                                                       17-cv-218-wmc

BRADLEY A. WINDESHAUSEN,

                         Appellee.

In this appeal from an adversary proceeding in bankruptcy, plaintiff-appellant Katherine Hebl challenges a finding that her state court judgment against defendant-appellee Bradley Windeshausen was not excepted from discharge under 11 U.S.C. § 523(a). The appeal contests both the bankruptcy court's legal conclusion that Hebl did not establish the amount of the debt and its factual determination that Windeshausen lacked the intent required to prevent a discharge under 11 U.S.C. § 523(a)(4). Hebl also contends that the doctrine of issue preclusion should have barred the bankruptcy court from reviewing her state court judgment. For the reasons that follow, the court will affirm the bankruptcy court's orders.

BACKGROUND

A. The Parties' Prior Business Relationship

Plaintiff-appellant Katherine Hebl began working as a waitress at a bar called Whiskey Dicks, which was co-owned and controlled by defendant-appellee Bradley Windeshausen, in 2006. Shortly after, the two became romantically involved. When Windeshausen's co-owner decided to leave the business in 2007, the three decided

collectively that Hebl would buy out the co-owner's share of Whiskey Dicks. At the time, Hebl was 21 and Windeshausen was 38.

In keeping with their understanding, Hebl agreed to pay $65,000 over the course of 40 months to acquire an interest in Whiskey Dicks. Furthermore, Hebl and Windeshausen apparently agreed that in order to become a full, 50% owner, she would need to match his investment of $365,000 in the business. Hebl proceeded to borrow that amount from her family and invested it into Whiskey Dicks and into Untouchables Enterprises, LLC, which was also controlled by Windeshausen and held title to the real property on which the bar sat.

Around the same time, Hebl and Windeshausen signed a membership agreement that stated that they would split Whiskey Dicks' profits and losses equally. (Bankr. dkt. #33-6 at pp.5-10.) However, that seemingly straightforward agreement was complicated by the practicalities of Hebl and Windeshausen's differing roles at the bar, as well as by their romantic entanglement. While Hebl managed the "front office" at the bar and handled customer interaction and regular personnel decisions, Windeshausen maintained control over the "back office," handled most of the accounting and banking, and hired accountants and office managers.

No formal line delineated these duties, and sometimes each would assume different roles, but this was the general pattern for the three and a half years in which the two co-owned Whiskey Dicks. Meanwhile, apparently because the two were living together, Windeshausen would draw more than his expected 50% from Whiskey Dicks to pay their joint living expenses. In contrast, Hebl did not take a regular draw, beyond what was

2

needed to repay the loans she took to acquire her interest in the business, but did take cash and occasionally charged expenses to Whiskey Dicks.

Sometime in 2011, both Hebl and Windeshausen's business and personal relationships deteriorated. In particular, Hebl discovered that Windeshausen had been concealing the extent of his withdrawals from the business, and he had taken more than she had realized, both for himself and for his separately-owned construction company. After this discovery, the two formed a new business arrangement to limit their interaction at the bar, which was predictably short-lived.

### B. State Court Action and Arbitration Award

In 2012, Hebl brought a state court action against Windeshausen, alleging both conversion and breach of contract. (Bankr. dkt. #33-3.)[1] That case went to arbitration under an agreement purporting to make any potential award nondischargeable in bankruptcy, while at the same time stating that there was *no* admission of fraud. (Bankr. dkt. #33-10.) Without making any findings of fact, the arbitrators awarded Hebl $310,000. (Bankr. dkt. #33-21.) On July 2, 2013, the circuit court confirmed the arbitrators' award for Hebl and entered final judgment. (Bankr. dkt. #33-22.)

### C. Bankruptcy Proceeding

Following the state court proceedings, Windeshausen filed for Chapter 7 bankruptcy in the Western District of Wisconsin. *See In re Windeshausen*, No. 15-10704

---

[1] Unless otherwise noted, the citations are to the adversary proceeding. *Hebl v. Windeshausen*, No. 15-00083 (Bankr. W.D. Wis.).

(Bankr. W.D. Wis. Feb. 28, 2015). Hebl filed an adverse proceeding, seeking a finding of nondischargeability of her $310,000 judgment under 11 U.S.C. § 523(a)(2) and § 523(a)(4). *Hebl v. Windeshausen*, No. 15-00083 (W.D. Wis. June 2, 2015). In response to Hebl's initial motion for summary judgment, the bankruptcy court held that the nondischargeability provision of the arbitration agreement was unenforceable, and further that the lack of findings in the state court judgment and underlying arbitration decision prevented the court from knowing whether the judgment stemmed from Hebl's contract claim or from her conversion claim. (Bankr. dkt. #21.) Since the source of the state judgment was unknown, the bankruptcy court reasoned that an evidentiary hearing was necessary to determine whether the elements of any provision of 11 U.S.C. § 523(a) were satisfied by the arbitration award and/or judgment.[2]

Shortly before the scheduled hearing, Windeshausen filed his own motion for judgment as a matter of law, which the bankruptcy court granted orally as to the § 523(a)(2) claim of nondischargeability, but denied as to § 523(a)(4). (Hearing Tr. (dkt. #3-2) 7-14.) As to the § 523(a)(2) claim, the court determined that Windeshausen could not be found to have committed *actual* fraud absent some proof that he intentionally made a false statement regarding the distribution of business funds. (*Id.* at 10-11.) As to the § 523(a)(4) claim, the court again determined that an evidentiary hearing was necessary.

Following that hearing, the bankruptcy court rejected Hebl's claim of nondischargeability for several reasons. (Bankr. dkt. #51.) Initially, the court found that

---

[2] In its summary judgment decision, the bankruptcy court also rejected several of Hebl's arguments related to promissory and judicial estoppel and attorney-client privilege. (Bankr. dkt. #21 at pp.13-22.) Because those arguments have not been raised in this appeal, the court does not reach them.

because Hebl had equal access to and control over the business finances, Windeshausen was not her "fiduciary" under § 523(a)(4), and so he could not have committed fraud or defalcation. Next, the court held that Windeshausen had not committed embezzlement as defined in § 523(a)(4), relying primarily on a factual finding that Windeshausen had not intended to hold money belonging to Hebl, but rather made draws to pay for joint expenses to which Hebl had acquiesced. Similarly, the court determined that Windeshausen had not committed larceny because he had the legal authority to make draws from the business. Finally, the bankruptcy court found that Hebl had not established the amount of any arguable nondischargeable debt, since she failed to provide enough credible evidence as to how much of the state court judgment stemmed from her conversion claim, as opposed to a breach of contract.[3]

OPINION

In her adversary proceeding below, Hebl asserted nondischargeability of the debt owed to her by Windeshausen under 11 U.S.C. § 523(a)(2)(A) and (a)(4), which provides

---

[3] Much of the bankruptcy court's opinion was devoted to the question of the parties' pre-arbitration agreement that any award would be nondischargeable in bankruptcy, either under a contract or promissory estoppel theory. Consistent with established law, the bankruptcy court found the provision unenforceable as a matter of bankruptcy law. (Bankr. dkt. #21 at pp.5-14 (citing *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); *In re Sasse*, 438 B.R. 631, 645 (Bankr. W.D. Wis. 2010) ("Pre-petition waivers of discharge or a promise not to file bankruptcy are not enforceable.")).) Appellant does not challenge this holding on appeal, nor could she, but this does not mean that she was without *any* ability to protect the enforceability of the arbitration award by advance agreement, either by entering into detailed stipulations of fact describing the dissipation of assets, *Klingman*, 832 F.2d at 1296-97, or more realistically here, requiring the arbitrators to set forth in detail the factual basis for the award and adoption by the state court. Of course, even failing this advance work, the bankruptcy court gave appellant every opportunity to prove actual fraud, which she failed to do as set forth in this opinion.

in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

While on appeal, Hebl appears to pursue only her claim under § 523(a)(4). The court will consider the exceptions to discharge under §523(a)(2)(A) as well because both provisions require a finding of an intent to defraud.

True to its express language, a finding on nondischargeability under § 523(a)(2)(A) requires a showing of fraud. "To prove that a debt is non-dischargeable because of fraud, a creditor must prove by a preponderance of evidence that '(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied.'" *Burse v. Gottlieb*, 621 F. App'x 852, 855 (7th Cir. 2015) (quoting *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010)).

Section 523(a)(4) effectively provides two exceptions to discharge: (1) fraud or defalcation while acting as a fiduciary; and (2) embezzlement or larceny, which does not require a showing a fiduciary relationship. *See In re Pawlinski*, 170 B.R. 380, 390 (Bankr. N.D. Ill. 1994) ("While Green had to show the existence of fiduciary relationships to establish that certain parts of the judgment debts arose from defalcation, the establishment

of a fiduciary relationship is not necessary when embezzlement is proven." (citing 3 Collier on Bankruptcy, ¶ 523.14, p. 523–102 (15th ed. 1992)).[4]  Both embezzlement and larceny require the debtor to have appropriated funds for his or her own benefit with fraudulent intent or deceit, the difference being only that embezzled property comes into the debtor's hands lawfully, while larceny requires that the debtor obtain the property unlawfully.  *See In re Weber*, 892 F.2d 534, 538-39 (7th Cir. 1989); *Digital Sys. Eng'g v. Moreno (In re Moreno)*, 414 B.R. 485, 491 (Bankr. W.D. Wis. 2009) (explaining difference between embezzlement and larceny); *In re Rasmussen*, 299 B.R. 902 (W.D. Wis. 2003), *aff'd sub nom. Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005) (reiterating requirement of fraudulent intent or deceit).[5]  Therefore, all of the exceptions to discharge pursued by Hebl

---

[4] While a finding of "defalcation" requires only "subjective recklessness," a lesser showing than that required for fraud, *In re Jahrling*, 816 F.3d 921, 926 (7th Cir. 2016), the appellant does not challenge the bankruptcy court's decision that a fiduciary relationship did not exist between Windeshausen and Hebl, apparently for good reason.  As the bankruptcy court concluded, the parties' agreement did *not* afford Windeshausen with ultimate control or power over the LLC, both had equal access to the bank accounts and business records, and Hebl had the authority to sign checks, make deposits and access records. (Bankr. dkt. #51 at p.8.)  *See also In re Berman*, 629 F.3d 761, 769 (7th Cir. 2011) ("[T]he non-dischargeability standard could be met where a fiduciary relationship involved a difference in knowledge or power giving one party a position of ascendancy over another."). Perhaps an argument existed as to unequal knowledge, but the bankruptcy court apparently found otherwise on the facts here.  Regardless, the appellant does not challenge that court's factual finding as to the general nature of the litigants' business relationship, and specifically this court has no basis to overturn those factual findings as clearly erroneous on this record.  This is particularly true when the bankruptcy court's findings as to appellant's knowledge of the appellee's removal of at least some assets from their joint business for various reasons, including their joint personal expenses, is unassailable.  As such, Hebl's only avenue under § 523(a)(4) involves showing either embezzlement or larceny.  Consistent with this understanding, Hebl's briefing focuses on embezzlement. (Appellant's Opening br. (dkt. #6-1) 18-19.)

[5] In an oral ruling on appellee's motion for judgment as a matter of law on the second day of the evidentiary hearing, Judge Furay stated that "the element of intent does not come into play in the same manner under Section 523(a)(4)." (Hearing Tr. (dkt. #3-2) 13.)  In a later written opinion, however, the court applied the correct finding that fraudulent intent or deceit *is* required to demonstrate embezzlement. (Bankr. dkt. #51 at p.15.)  As such, any misstatement as to the intent requirement in her oral ruling is harmless.

7

in this bankruptcy court required her to demonstrate by a preponderance of the evidence that Windeshausen acted with fraudulent intent in taking funds from the parties' business. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654 (1991). ("The creditor seeking to establish a nondischargeable debt under section 523(a)(4) bears the burden to establish each element thereunder by a preponderance of the evidence.").

Hebl purports to appeal four of the bankruptcy court's rulings, asserting reversible error as to each: (1) the refusal to find issue preclusion with respect to the arbitration award; (2) the legal conclusion that plaintiff did not establish the amount of the nondischargeable debt; (3) the admission of new evidence that had not been presented at the state arbitration; and (4) the determination that defendant's conduct lacked the intent required to fall under the exceptions to discharge in 11 U.S.C. § 523(a). Although appellant portrays these arguments as independent bases for reversal, the first three all speak to the same underlying issue: whether the state court arbitration award and judgment established the elements necessary for nondischargeability under § 523(a) as a matter of law? The last challenge to the court's finding of a lack of fraudulent intent or deceit is obviously based on a claimed error of fact. This court reviews the bankruptcy court's findings of fact deferentially for clear error and its legal conclusions de novo. *See In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (citing Fed. R. Bankr. P. 8013; *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998)).

## I. Treatment of State Court Judgment

### A. Issue Preclusion

The court reviews the bankruptcy court's refusal to apply issue preclusion de novo as a question of law. *Reeves v. Davis* (*In re Davis*), 638 F.3d 549, 553 (7th Cir. 2011) ("Whether the issue of intent was litigated and resolved in the state court action, as required for application of collateral estoppel, is [a] question of law."). Hebl contends that "[t]he state court judgment, arising from the arbitration is a final judgment on the merits of the conversion claim," and therefore entitled to preclusive effect. (Appellant's Opening Br. (dkt. #6-1) 14.) The determination of whether issue preclusion applies is governed by Wisconsin law. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998) ("Because a Colorado court rendered the default judgment, Colorado law governs whether the judgment has issue-preclusive effect."); *see also* 28 U.S.C. § 1738 (full faith and credit statute). To determine whether issue preclusion applies, the court must first determine whether the issue was "actually litigated and determined by a valid and final judgment." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 772–73 (7th Cir. 2013) (quoting *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis.2d 381, 497 N.W.2d 756, 762 (Ct. App. 1993)). Second, if that requirement is satisfied, then the court must consider whether "the determination is essential to the judgment." *Id.* And third, if that requirement is satisfied, then the court must consider whether it is "fundamentally fair" to apply issue

preclusion. *Id.*[6]

Appellant's argument for issue preclusion fails to clear even the first requirement because the elements for satisfying § 523(a)(2)(A) or § 523(a)(4) were not actually litigated and determined by the state court judgment. As described above, Hebl brought claims for both breach of contract and conversion. Unfortunately, the arbitrators provided no explanation for their finding in Hebl's favor and awarding her $310,000. As Judge Furay pointed out, "[b]ecause there were no findings of fact or conclusion of law in the arbitration award, it is not possible to determine whether the elements for any claim under section 523 were present and satisfied by the arbitration award." (Bankr. dkt. #21 at 12.) Appellant nevertheless again contends on appeal that the arbitrators must have relied on her conversion claim because: (1) "the arbitration briefs, the damage analysis and the other evidence indicate that [the breach of contract claim] was not the claim at arbitration"; and (2) "[t]he trial court did not make a finding that the debt arose out of a breach of contract claim, nor could such a finding be made on this evidence." (Appellant's Opening Br. (dkt. #6-1) 17.) This argument, however, falls short of demonstrating that the arbitrators actual found conversion in Hebl's favor for purposes of issue preclusion under Wisconsin law.

Even if such a finding could be made, however, the appellant has a more

---

[6] "Several factors may inform [this fundamental fairness] determination, including (1) whether the party could have obtained review of the judgment; (2) whether there have been changes in the law since the first action; (3) whether the claims in the two cases are "distinct"; (4) whether there were significant differences in the quality or extensiveness of the proceedings; (5) whether the burdens of proof are different in the two cases; and (6) whether the party had an adequate opportunity and incentive to obtain a full and fair adjudication in the initial action." *Kelley v. Ahern*, 541 B.R. 860, 863 (W.D. Wis. 2015) (citing *Michelle T. by Sumpter v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327, 330–31 (1993)).

10

fundamental problem: fraud is *not* an element of a conversion claim under Wisconsin law. Assuming again that the arbitrators found conversion, they need only have found: (1) intentional control or taking of property belonging to Hebl; (2) without Hebl's consent; which (3) resulted in serious interference with Hebl's right to possess the property. *See First Weber*, 738 F.3d at 773 (citing *H.A. Friend & Co. v. Prof. Stationery, Inc.*, 294 Wis. 2d 754, 720 N.W.2d 96, 100 (Wis. Ct. App. 2006)). Moreover, even appellant acknowledged that the embezzlement exception under § 523(a)(4) requires a showing of conversion *"with fraudulent intent."* (*See also* Appellant's Opening Br. (dkt. #6-1) 18 (emphasis added).) Having reviewed the arbitration award and the state court judgment confirming that award, the court must affirm the bankruptcy court's legal conclusion that neither the award, nor the judgment affirming that award, bars Windeshausen's opposition to Hebl's claim of nondischargeability.

### B. Amount of Nondischargeable Debt

More narrowly, appellant also argues that the bankruptcy court committed an error of law by finding that she had not established the existence and amount of the appellee's debt to her. However, this is an obvious mischaracterization of that court's holding. Rather, the bankruptcy court held the appellant had failed to establish the existence and amount of any *nondischargeable* debt. That finding in turn springs from the larger dispute concerning the basis of the state court judgment already addressed. In short, the bankruptcy court certainly did not hold that appellant had not established the existence of a $310,000 debt. Indeed, the judgment in that amount is what gave her standing to pursue full payment in the bankruptcy court to begin with. That court held the appellant failed

11

to establish by a preponderance of the evidence how much -- if any -- of that debt was nondischargeable. Accordingly, this argument is a non-starter.[7]

### C. Evidence Reviewed

Appellant last argues that the bankruptcy court considered evidence the appellee had the opportunity to introduce as part of the state court arbitration but failed to do so, and that the court's reliance on that evidence in determining the appellee's lack of a fraudulent intent or deceit was an error of law. Appellant may well be correct that a party should not relitigate in bankruptcy court an issue already decided in state court. As discussed above, however, the issue of appellee's fraudulent intent was *not* litigated in the state court, or, at the very least, not under the standard applicable in this bankruptcy proceeding. Since the bankruptcy court made the factual determination that the arbitration had not established conversion, let alone fraudulent intent, it was not precluded from hearing the parties' evidence and argument on intent never before the state court and arbitrators.

## II. Intent Requirement

Having found no error in the bankruptcy court's treatment of the state court judgment, the court now considers the bankruptcy court's determination that appellant failed to demonstrate non-dischargeability, and in particular, failed to establish fraudulent intent on the part of appellee. Despite appellant's best efforts to show otherwise, the

---

[7] Given its lack of arguable merit, appellant's devotion of her entire reply brief to that issue is inexplicable. (Appellant's Reply (dkt. #10).)

question of appellee's fraudulent intent for purposes of § 523(a) is one of fact, which "is subject to the highly deferential 'clearly erroneous' standard of review." *Reeves*, 638 F.3d at 553.

In both the oral opinion and written decision, the bankruptcy court thoroughly reviewed the testimony and other evidence, explaining in detail the reasoning behind the finding that appellant had failed to meet her burden of demonstrating fraudulent intent, among other elements of nondischargeability. (Bankr. dkt. #51; Hearing Tr. (dkt. #3-2) 7-14.) Specifically, the bankruptcy court considered Hebl's and Windeshausen's respective testimony and found Windeshausen more credible in describing the parties' business relationship, and even more specifically their use of funds from the LLC. (Bankr. dkt. #51 at p.12.) *See First Weber*, 738 F.3d at 776 ("We must be especially deferential toward a trial court's assessment of witness credibility.").

Moreover, Judge Furay reviewed the testimony of other employees of the LLC, concluding that the testimony supported a finding that (1) both Hebl and Windeshausen regularly took cash out of the business and (2) Hebl was aware of Windeshausen's removal of funds. Thus, the evidence undermines a finding of larceny, which requires that the property was taken unlawfully, with respect to some, if not most, of the money that Windeshausen took from the business. Finally, with respect to the embezzlement claim, the bankruptcy court concluded that in light of the fact that the "funds taken were also used for joint living expenses and Hebl consented to -- or at least acquiesced in -- having Windeshausen pay those expenses from LLC funds," appellant failed to demonstrate that Windeshausen acted with the necessary fraudulent intent or deceit. (Bankr. dkt. #51 at

13

p.15.)  The bankruptcy court's treatment of the evidence and thorough explanation of its ultimate findings is, therefore, more than sufficient to satisfy the clear error standard of review.  *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010) ("When there are two permissible views of the evidence, the [court]'s choice between them cannot be clearly erroneous.").

## ORDER

IT IS ORDERED that the bankruptcy court's denial of appellant Katherine Hebl's claim for nondischargeability is AFFIRMED.

Entered this 4th day of October, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge